**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1597

UNITED STATES OF AMERICA AND THE STATES OF NORTH CAROLINA, CALIFORNIA, ILLINOIS ex rel. SCARLETT LUTZ, KAYLA WEBSTER, DR. MICHAEL MAYES AND CHRIS RIEDEL,

Plaintiff,

and

BLUEWAVE HEALTHCARE CONSULTANTS, INC.; FLOYD CALHOUN DENT, III; ROBERT BRADFORD JOHNSON,

Defendants – Appellants,

and

HEALTH DIAGNOSTIC LABORATORY INC.; SINGULEX INC.; LABORATORY CORPORATION OF AMERICA HOLDINGS; PHILIPPE J. GOIX, PhD; BERKELEY HEARTLAB, INC.; LATONYA MALLORY; QUEST DIAGNOSTICS, INCORPORATED,

Defendants,

v.

UNITED STATES OF AMERICA,

Intervenor – Appellee,

and

BLUE EAGLE FARMING, LLC; EAGLE RAY INVESTMENTS, LLC; FORSE INVESTMENTS, LLC; CHRISTINA M. DENT; LAKELIN PINES, LLC; TRINI "D" ISLAND, LLC; WAR-HORSE PROPERTIES, LLLP,

Parties-in-Interest.

---

**16-1600**

---

UNITED STATES OF AMERICA AND THE STATES OF NORTH CAROLINA, CALIFORNIA, ILLINOIS ex rel. SCARLETT LUTZ, KAYLA WEBSTER, DR. MICHAEL MAYES AND CHRIS RIEDEL,

        Plaintiff,

    and

BLUE EAGLE FARMING, LLC; EAGLE RAY INVESTMENTS, LLC; FORSE INVESTMENTS, LLC; WAR-HORSE PROPERTIES, LLLP,

        Parties-in-Interest – Appellants,

        v.

UNITED STATES OF AMERICA,

        Intervenor – Appellee,

    and

BLUEWAVE HEALTHCARE CONSULTANTS, INC.; FLOYD CALHOUN DENT, III; ROBERT BRADFORD JOHNSON; HEALTH DIAGNOSTIC LABORATORY INC.; SINGULEX INC.; LABORATORY CORPORATION OF AMERICA HOLDINGS; PHILIPPE J. GOIX, PhD; BERKELEY HEARTLAB, INC.; LATONYA MALLORY; QUEST DIAGNOSTICS, INCORPORATED,

        Defendants,

    and

CHRISTINA M. DENT; LAKELIN PINES, LLC; TRINI "D" ISLAND, LLC,

        Parties-in-Interest.

2

---
**16-1601**
---

UNITED STATES OF AMERICA AND THE STATES OF NORTH CAROLINA, CALIFORNIA, ILLINOIS ex rel. SCARLETT LUTZ, KAYLA WEBSTER, DR. MICHAEL MAYES AND CHRIS RIEDEL,

> Plaintiff,

and

CHRISTINA M. DENT; LAKELIN PINES, LLC; TRINI "D" ISLAND, LLC,

> Parties-in-Interest – Appellants,

> v.

UNITED STATES OF AMERICA,

> Intervenor – Appellee,

and

BLUEWAVE HEALTHCARE CONSULTANTS, INC.; FLOYD CALHOUN DENT, III; ROBERT BRADFORD JOHNSON; HEALTH DIAGNOSTIC LABORATORY INC.; SINGULEX INC.; LABORATORY CORPORATION OF AMERICA HOLDINGS; PHILIPPE J. GOIX, PhD; BERKELEY HEARTLAB, INC.; LATONYA MALLORY; QUEST DIAGNOSTICS, INCORPORATED,

> Defendants,

and

BLUE EAGLE FARMING, LLC; EAGLE RAY INVESTMENTS, LLC; FORSE INVESTMENTS, LLC; WAR-HORSE PROPERTIES, LLLP,

> Parties-in-Interest.

---

3

Appeals from the United States District Court for the District of South Carolina, at Beaufort.  Richard M. Gergel, District Judge.  (9:14-cv-00230-RMG)

———————————

Argued:  January 26, 2017                      Decided:  March 23, 2017

———————————

Before GREGORY, Chief Judge, and DUNCAN and FLOYD, Circuit Judges.

———————————

Dismissed by published opinion.  Judge Duncan wrote the opinion, in which Chief Judge Gregory and Judge Floyd joined

———————————

**ARGUED:** Morris Dawes Cooke, Jr., BARNWELL WHALEY PATTERSON & HELMS, L.L.C., Charleston, South Carolina; Thomas Parker Gressette, Jr., PRATT-THOMAS WALKER, PA, Charleston, South Carolina; Nekki Shutt, CALLISON, TIGHE & ROBINSON, LLC, Columbia, South Carolina, for Appellants.  Henry Charles Whitaker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** Joseph P. Griffith, Jr., JOE GRIFFITH LAW FIRM, LLC, Charleston, South Carolina; Bradley B. Banias, BARNWELL WHALEY PATTERSON & HELMS, L.L.C., Charleston, South Carolina, for Appellants BlueWave Healthcare Consultants, Inc., Floyd Calhoun Dent, III, and Robert Bradford Johnson.  John P. Linton, Jr., PRATT-THOMAS WALKER, PA, Charleston, South Carolina, for Appellants Blue Eagle Farming, LLC, Eagle Ray Investments, LLC, Forse Investments, LLC, and War-Horse Properties, LLLP.  Louis H. Lang, Jacqueline M. Pavlicek, CALLISON, TIGHE & ROBINSON, LLC, Columbia, South Carolina, for Appellants Christina M. Dent, Lakelin Pines, LLC, and Trini "D" Island, LLC.  Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Michael S. Raab, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Beth Drake, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia,  South Carolina, for Appellee.

———————————

DUNCAN, Circuit Judge:

Appellants challenge the district court's denial of their motions to quash writs of attachment against real and personal property and writs of garnishment against two bank accounts. Because we conclude that the denial is an unreviewable interlocutory order, we dismiss for lack of jurisdiction.

## I.

## A.

In 2010, Floyd Calhoun Dent III ("Dent") and Robert Bradford Johnson ("Johnson") founded BlueWave Healthcare Consultants, Inc. ("BlueWave"), which served as the exclusive marketing agent for two blood test laboratories, Health Diagnostic Laboratories, Inc. ("HDL") and Singulex. BlueWave operated pursuant to substantially similar sales agreements with both labs. Under the sales agreements, HDL and Singulex agreed to pay BlueWave a monthly base fee as well as commissions ranging between 13.8% and 24% of all lab revenue generated in BlueWave's sales territory.[1] The labs would also pay a physician a "processing and handling fee" between $10 and $20 if the physician chose HDL or Singulex to process blood work. After performing the blood

---

[1] BlueWave's only clients were HDL and Singulex. The HDL sales agreement terminated in January 2015 and the Singulex sales agreement terminated in October 2014.

5

tests, the labs billed insurance companies--including federally funded insurance programs Medicare and TRICARE--for reimbursement.[2]

B.

In 2014, two relators filed a qui tam action against Johnson, Dent, and BlueWave (collectively, "BlueWave Defendants"), and the United States intervened in April 2015.[3] The government alleged that BlueWave Defendants violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b ("AKS"), and False Claims Act, 31 U.S.C. § 3729 *et seq*. ("FCA"). An AKS violation that results in a federal health care payment is a per se false claim under the FCA. 42 U.S.C. § 1320a-7b(g). According to the government's complaint, BlueWave Defendants, acting as sales agents on behalf of HDL and Singulex, arranged for illegal kickbacks to physicians under the guise of the processing and handling fees.

On February 5, 2016, the United States filed an application for prejudgment remedies under the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001 *et seq*. Specifically, the government sought writs of attachment against personal and real property and writs of garnishment against bank accounts totaling

---

[2] Medicare is a federally subsidized health insurance program for the elderly and certain disabled persons. 42 U.S.C. § 1395c. The Department of Defense provides medical care to current and retired service members and their families through the TRICARE health insurance program. 32 C.F.R. § 199.17 (2016).

[3] The qui tam action also listed as defendants HDL, Singulex, HDL founder LaTonya Mallory, and Singulex CEO Philippe Goix, who are not part of this appeal.

approximately $16.7 million.[4]  BlueWave Defendants as well as related nonparties, the Johnson and Dent entities, own the property.[5]

The government's application recounted its evidence that BlueWave Defendants violated the AKS and FCA through the sales agreements and alleged that, as a result of this conduct, BlueWave Defendants owe the United States at least $298 million.  The government also alleged prejudgment seizure was necessary because BlueWave Defendants were actively concealing and disposing of assets.  On February 10, 2016, the district court held a hearing on the FDCPA application pursuant to 28 U.S.C. § 3101(a)(3)(A) and granted all of the writs except one.[6]

The district court found that the government sufficiently alleged that BlueWave Defendants were debtors under the FDCPA because a person automatically incurs a debt once the government pays a fraudulent claim.  The district court also concluded that, although the Johnson and Dent entities "are not parties to the underlying litigation" or "debtors within the meaning of the FDCPA," their property was subject to attachment.

---

[4] A prejudgment writ of attachment or garnishment creates a secured lien on a defendant's property in the event that a plaintiff obtains a judgment against the defendant and the defendant is unable to satisfy the judgment.  Black's Law Dictionary 152–53, 794–95 (10th ed. 2014).  Attachment applies to property in the debtor's possession and garnishment applies to a debtor's property in the control of a third-party, such as a bank account.  *Id.*

[5] The nonparties include entities connected to Johnson and Dent: Blue Eagle Farming, LLC, Eagle Ray Investments, Forse Investments, LLC, War-Horse Properties, LLLP (collectively, "the Johnson entities"); and Christina M. Dent, Lakelin Pines, LLC, Trini "D" Island, LLC (collectively, "the Dent entities").

[6] The district court denied the government's application as to a bank account for which Johnson is the sole owner/signatory.  That account is not at issue in this appeal.

7

J.A. 1507, 1510. With regard to the Johnson entities, the district court determined that their properties were subject to attachment pursuant to 28 § U.S.C. 3102(b) because the government had produced sufficient evidence to support a finding that Johnson has a "substantial nonexempt interest" in them. As to the Dent entities, the government argued it was entitled to prejudgment attachment under Subchapter D of the FDCPA, which governs fraudulent transfers. *Id.* § 3304(b)(1). If the government can establish that a debtor has made fraudulent transfers, the court can order "any other relief the circumstances may require." *Id.* § 3306(a)(3). Finding that Dent had fraudulently transferred property to the Dent entities, the district court also granted writs of attachment as to them.

BlueWave Defendants, the Johnson entities, and the Dent entities (collectively, "Appellants") each filed a motion to quash the writs. Following argument on May 5, 2016, the district court found that the government had satisfied the FDCPA's statutory requirements and denied the motion. Appellants noticed this appeal, asserting that the denial of the motion to quash is immediately appealable under the collateral order doctrine and 28 U.S.C. § 1292(a)(1). In response, the government filed a motion to dismiss the appeal for lack of jurisdiction. We deferred ruling on that motion pending a review of the merits. Because we hold today that a party can only appeal an order denying a motion to quash writs of attachment or garnishment after final judgment, we grant the government's motion to dismiss.

8

II.

Appellants assert various reasons why the government was not entitled to prejudgment writs of attachment and garnishment. We must first, however, consider the threshold issue of jurisdiction. *United States v. Jefferson*, 546 F.3d 300, 308 (4th Cir. 2008).

Article III courts are courts of limited jurisdiction, possessing only the authority granted by Congress and the Constitution. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Generally, a party may only appeal an order that is final, that is, nothing remains for the district court to do except execute the judgment. *See* 28 U.S.C. § 1291; *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009). As relevant here, however, a party may appeal an interlocutory order in two narrowly defined circumstances. The first is the collateral order doctrine, a judicially-created exception that allows appellate courts to review orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

A second exception to finality is statutory. 28 U.S.C. § 1292(a)(1) provides appellate courts with jurisdiction over certain interlocutory orders of the district court, including those "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions."

Appellants assert that the order here is reviewable as either a collateral order or an injunction. We discuss each basis in turn.

9

A.

The collateral order doctrine is a limited exception to the requirement of finality reserved for the "small class" of rulings that meet three "stringent" conditions. *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1992)). The order must "[1] conclusively determine the disputed question, [2] resolve an important issue separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Id.* (alteration in original) (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). An order must satisfy all three requirements for the collateral order doctrine to apply. *Carefirst of Md., Inc. v. Carefirst Urgent Care, LLC* (*In re Carefirst of Md., Inc.*), 305 F.3d 253, 258 (4th Cir. 2002).

Because the order here fails to resolve an important issue distinct from the merits, we focus our discussion on the second requirement, which has two prongs: (1) separability from the merits and (2) importance. The denial order here satisfies neither prong of the second requirement; therefore, it is not a collateral order.[7]

1.

First, the denial order is completely enmeshed with the merits of the qui tam action. Appellants' principal argument is that the government's application did not

---

[7] Although our discussion of the second requirement is dispositive, we note, without the need to decide, that the order here also does not appear to satisfy the third condition--that of being effectively unreviewable on appeal. *See e.g.*, *Mohawk*, 558 U.S. at 108.

satisfy the FDCPA's statutory requirements. The government here applied for prejudgment remedies under Subchapters B and D. Subchapter B governs prejudgment remedies generally and allows the government to seek prejudgment remedies if it shows "reasonable cause to believe that" a debtor "has or is about to assign, dispose, remove, conceal, ill treat, waste, or destroy property with the effect of hindering, delaying, or defrauding the United States." 28 U.S.C. § 3101(b)(1)(B). To obtain prejudgment remedies under Subchapter B, the government must file an application and establish a "probable validity of the claim for a debt" as well as the amount of debt claimed. *Id.* § 3101(c). The government may also request prejudgment remedies under Subchapter D, which concerns fraudulent transfers. If the government can establish a fraudulent transfer, a court may issue "any other relief the circumstances may require," including prejudgment attachment. *Id.* § 3306(a)(3).

In order to decide whether the government is entitled to prejudgment remedies under the FDCPA, we must review the underlying merits of the FCA claims. In other words, the issues Appellants ask us to resolve today--whether the government sufficiently established (1) a probable validity of the debt, (2) the amount of the debt, (3) that Appellants have concealed or disposed of assets with the effect of defrauding the government, and (4) that the nonparty assets are subject to attachment--all turn on the viability of the government's underlying FCA litigation. Thus, whether BlueWave Defendants violated the FCA is a threshold inquiry for each of Appellants' FDCPA challenges. Because we cannot review these issues apart from the merits, we cannot apply the collateral order doctrine to the instant appeal.

11

Appellants counter that our decision in *Buckeye Union Insurance Co. v. Wilmoth* (*In re St. Paul A.M.E. Church Housing Corp.*), 541 F.2d 463 (4th Cir. 1976) (per curiam), controls here.  In *Buckeye*, a district court interpreted an indemnity agreement to require indemnitors to post a $1 million bond to protect an insurer during litigation.  On appeal, the sole issue before this court was the proper interpretation of the indemnity contract, which did not involve the merits of the underlying litigation at all.  We held in *Buckeye* that "[a]n order requiring or refusing to require the posting of security during the pendency of litigation is 'collateral' and is appealable under" *Cohen.  Id.* at 464.  Appellants argue that *Buckeye* controls because both the order here and the order in *Buckeye* concern prejudgment remedies.  We disagree.

*Buckeye* is distinguishable and provides no help to Appellants.  First, requiring a party to "pony up" and post security at the outset of litigation is not functionally equivalent to freezing existing assets.  Second, unlike the present appeal, *Buckeye* typifies the kind of order that is collateral to the merits of an underlying action.[8]  We therefore conclude that the order here is not collateral because Appellants' issues "in the main . . .

---

[8] The Johnson and Dent entities contend that their challenge is completely separate from the merits.  Assuming without deciding that is correct, the order is still not immediately appealable as to them because it does not conclusively determine the issue on the merits nor is it effectively unreviewable on appeal--the first and third elements of the collateral order doctrine.  The district court may "at any time on its own initiative or the motion of any interested person, . . . make an order . . . modifying the use of any enforcement procedure" under the FDCPA.  28 U.S.C. § 3013; *see also Cameco Indus., Inc. v. Mayatrac, S.A.*, 789 F. Supp. 200, 205 (D. Md. 1992) (dissolving a previously issued prejudgment writ of attachment).  As discussed further *infra* Part II.B.2, the order can also be effectively reviewed on appeal as to the nonparties.

will substantially overlap factual and legal issues of the underlying dispute." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988).

2.

In addition to being separate from the merits, the second collateral order condition requires that the order involve an important interest. The order here does not. "Important" in the context of the collateral order doctrine means those interests that extend beyond the parties and implicate the broader public interest or a "particular value of a high order." *See Will*, 546 U.S. at 352–53. As such, the Supreme Court has allowed immediate appeal of orders denying absolute presidential immunity, qualified immunity for a former Attorney General, a claim of state sovereign immunity, and, in the criminal context, a motion to dismiss based on double jeopardy. *See id.* at 350 (collecting cases). In contrast to the broadly cast concerns that usually justify invoking the collateral order exception, Appellants here assert only the narrow personal interest of the retention of their own property during the course of litigation. *See* Appellants' Br. at 16 ("[T]he private interests here are significant."). The government's seizure of $16.7 million of Appellants' personal and corporate assets may be significant to the parties but "[w]e routinely require litigants to wait until after final judgment to vindicate valuable rights." *Mohawk*, 558 U.S. at 108–09.[9]

---

[9] Furthermore, because the interests here are not "'important' in *Cohen*'s sense," *Will*, 511 U.S. at 880, the third collateral order condition is also not satisfied. *See, e.g.*, *Dig. Equip.*, 511 U.S. at 878–79 (noting that the third collateral order requirement "cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement").

The order here fails to resolve an important issue distinct from the merits. Mindful of the Supreme Court's modern insistence that the scope of the collateral order doctrine remain limited, *see Will*, 546 U.S. at 350, we hold that the denial of a motion to quash a writ of attachment or garnishment is not a collateral order.

B.

Appellants alternatively argue that, even though the order was not styled as such, they can appeal it as an injunction under 28 U.S.C. § 1292(a)(1) because it prevents them from disposing of their property. Again, we disagree.

To determine whether an order amounts to an injunction, we first look at the practical effect of the order rather than the label ascribed to it. *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 507 (4th Cir. 1999). Under the general definition, an injunction is a "court order commanding or preventing an action." Black's Law Dictionary 904 (10th ed. 2014). Most court orders are injunctions at some level of generality, but Congress did not envision that every interlocutory order restraining a party's actions could be appealed under § 1292(a)(1). Like the collateral order doctrine, § 1292(a)(1) "was intended to carve out only a limited exception to the final-judgment rule" and, therefore, a litigant must also show "more than that the order has a practical effect" of an injunction to immediately appeal an interlocutory order. *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981). An appealable order is one that (1) may have a "serious, perhaps irreparable consequence" and (2) can only be "effectually challenged" through immediate appeal. *Id.* (*quoting Balt. Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181 (1955)). The order here meets neither requirement.

14

### 1.

First, Appellants pointed to no "serious, perhaps irreparable consequence." *Id.* The writs only encumber Appellants' property. Contrary to Appellants' unsupported assertions, they remain free to conduct business from or live on the properties.[10] The district court also froze two bank accounts, one in BlueWave's name and another operated by BlueWave Defendants.[11] But, as BlueWave no longer has any clients, Appellants fail to demonstrate the irreparable consequence in garnishing these accounts.

### 2.

The second requirement for an injunction--that an appellate court cannot effectively review the order after final judgment--also is not met here. "Effective review" means that an appellate court can provide the party with complete relief. The writs here will not permanently affect Appellants' property rights unless the government prevails and BlueWave Defendants cannot satisfy the judgment. Until final judgment on the underlying litigation, there is no harm in preserving the status quo. Indeed, that is the purpose of a prejudgment remedy. *Rahman*, 198 F.3d at 496. Should BlueWave

---

[10] We reiterate that our decision today is premised on Appellants' failure to show any irreparable consequence. The parties may seek relief from the court upon a satisfactory showing that the writs have hindered their ability to pay living expenses or legal fees. *Cf. Mitsubishi Intern. Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1516 (11th Cir. 1994).

[11] The second account belongs to Cobalt Healthcare Consultants, Inc., a healthcare marketing company that Dent and Johnson incorporated in January 2013 after the government served BlueWave with a subpoena. Cobalt's account included over $10 million in deposits from BlueWave Defendants.

Defendants prevail on the qui tam action, the court will dissolve the writs. If the government prevails, Appellants can appeal the judgment and the writs at that time. Either way, Appellants can obtain complete relief after final judgment. Absent special circumstances not present here, an order that only freezes assets during litigation and does not require any additional activity does not fall within the class of interlocutory orders Congress intended to exclude from the final-judgment rule. Therefore, we hold that the district court's order denying the motion to quash is not an injunction.

III.

Piecemeal litigation is disfavored and permitted only in limited circumstances not present here. For the aforementioned reasons, we grant the government's motion and dismiss this appeal for lack of jurisdiction.

DISMISSED